1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10  GAIL C. JACKSON,

11                      Plaintiff,                    CASE NO. 2:16-CV-00415-DWC

12          v.                                        ORDER ON PLAINTIFF'S
                                                      COMPLAINT
13  CAROLYN W. COLVIN, Acting
    Commissioner of Social Security,
14
                        Defendant.
15

16          Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the

17  denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental

18  Security Income ("SSI") benefits. The parties have consented to proceed before a United States

19  Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule

20  MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

21          After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ")

22  erred by failing to properly evaluate the opinions of two examining psychologists and one

23  consulting psychologist. Therefore, this matter is reversed and remanded, pursuant to sentence

24  four of 42 U.S.C. § 405(g), for further proceedings.

## **PROCEDURAL & FACTUAL HISTORY**

Plaintiff originally applied for DIB and SSI on July 19, 2009. *See* Dkt. 9, Administrative Record ("AR") 88. The prior application was denied on initial review, reconsideration, and in a written decision dated November 16, 2011, by ALJ Mattie Harvin-Woode. AR 88, 107. The Appeals Council declined review of the case, and Plaintiff did not appeal ALJ Harvin-Woode's decision under 42 U.S.C. § 405(g), thus making ALJ Harvin-Woode's decision a final decision of the Commissioner of Social Security. AR 113, 20 C.F.R. § 404.981, § 416.1481.

On September 26, 2012, Plaintiff filed a new application for DIB, and on June 18, 2013, Plaintiff filed a new application for SSI. AR 250-51, 253-58. Plaintiff alleges she became disabled on November 1, 2004, due to major depressive disorder, anxiety, borderline personality disorder, as well as other physical and mental impairments. *See* AR 14, 250, 341.  Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 119-60. A hearing was held before ALJ Cynthia Rosa on September 24, 2014, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 52.

On November 18, 2014, ALJ Rosa found Plaintiff had failed to offer changed circumstances sufficient to rebut the presumption of continuing non-disability created by ALJ Harvin-Woode's prior decision. AR 12. Further, ALJ Rosa found Plaintiff continued to be not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, from November 17, 2011 through the date of ALJ Rosa's decision. AR 43. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 22, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On March 22, 2016, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

1    Plaintiff argues the denial of benefits should be reversed and remanded for further

2    proceedings, because the ALJ erred by: 1) failing to properly discount the opinions of two

3    examining psychologists and one consulting psychologist; 2) improperly concluding Plaintiff had

4    not sufficiently rebutted the presumption of continuing non-disability; and 3) improperly finding

5    Plaintiff was capable of performing work existing in significant numbers in the national

6    economy. Dkt. 11, p. 1.

7                            **STANDARD OF REVIEW**

8    Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

9    security benefits only if the ALJ's findings are based on legal error or not supported by

10   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

11   Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is

12   more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable

13   mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747,

14   750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

15                            **DISCUSSION**

16   The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less

17   than the full range of light work. AR 17. Specifically, the ALJ found Plaintiff was able to: lift

18   and carry 20 pounds occasionally and 10 pounds frequently; frequently balance and stoop;

19   occasionally kneel, crouch, and crawl; and occasionally climb ramps and stairs. AR 17. Further,

20   the ALJ found Plaintiff was able to perform simple tasks as well as some complex and detailed

21   tasks, perform jobs consisting mainly of independent tasks with occasional superficial in-person

22   contact with the general public, frequent non-direct contact with the general public, and

23   occasional superficial interaction with her coworkers. AR 17. The ALJ noted this RFC finding

24

1    was unchanged from the prior ALJ decision, as Plaintiff failed to establish a change in her

2    functioning under *Chavez v. Brown*, 844 F.2d 691 (9th Cir. 1988), in order to overcome the

3    presumption of continuing non-disability. AR 17. Plaintiff argues this RFC finding was

4    erroneous, as the ALJ failed to incorporate the more restrictive limitations opined to by two

5    examining psychologists and one consulting psychologist, and the ALJ incorrectly concluded

6    Plaintiff had not overcome the presumption of continuing non-disability.

7    I.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

8            **A.  Standard**

9            The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

10   opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d

11   821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v.*

12   *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an

13   examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must

14   set forth specific, *legitimate* reasons that are supported by substantial evidence in the record."

15   *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester*, 81 F.3d at 831). The ALJ

16   can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting

17   clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157

18   F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must do

19   more than state her conclusions; the ALJ must explain why her own interpretations, rather than

20   those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey*, 849 F.2d at 421-22).

21   The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v.*

22   *Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395

23

24

1   (9th Cir. 1984)). The "ALJ's written decision must state reasons for disregarding [such]

2   evidence." *Flores*, 49 F.3d at 571.

3   **B.   Application of Standard**

4   1. *Barbara Lui, Ph.D.*

5   Dr. Lui examined Plaintiff on July 6, 2012. AR 1097. On examination, Plaintiff related a

6   history of childhood abuse, numerous physical ailments, and a background of learning disability

7   and attention-deficit hyperactivity disorder ("ADHD"). AR 1098. Plaintiff explained she had

8   difficulty sustaining employment due to "social skills challenges as well as problems getting to

9   work on time." AR 1098. On mental status examination, Plaintiff presented with depressed, sad,

10  labile, and anxious mood and affect, as well as hyperactive and erratic appearance. AR 1102. She

11  demonstrated thought content not within normal limits, including compulsions, phobias, suicidal

12  ideation, and rumination about failures. AR 1102. Her thought process was rambling and

13  somewhat disorganized, and she was unable to recall a five digit span backwards, though she

14  otherwise performed digit span tests within normal limits. AR 1102. Finally, Plaintiff

15  demonstrated poor insight and judgment, especially concerning her belief she could live

16  independently. AR 1103.

17  Dr. Lui diagnosed Plaintiff with: Major Depressive Disorder, severe without psychotic

18  features but with anxious tendency; ADHD by history; and Cluster B and C personality traits.

19  AR 1097. As a result of these impairments, Dr. Lui opined Plaintiff would have difficulty living

20  independently. AR 1103. Dr. Lui also assessed Plaintiff with a GAF score of 44, and opined

21  Plaintiff would have difficulty interacting with people and maintaining a steady work schedule

22  due to her inability to adhere to a 9 to 5 job and other ADHD symptoms. AR 1098.

23

24

1    The ALJ discussed Dr. Lui's clinical findings, and gave little weight to Dr. Lui's opinion

2    regarding Plaintiff's ability to live independently because "she subsequently demonstrated that

3    she could do so[.]" AR 20. However, the ALJ fails to discuss what weight, if any, the ALJ gave

4    to the balance of Dr. Lui's other opinions, such as her opinions Plaintiff would have difficulty

5    interacting with people and problems maintaining a steady work schedule. AR 20, 1097-98. This

6    was error.

7         Social Security regulations require an ALJ to consider all medical opinions in the record,

8    regardless of source. 20 C.F.R. §§ 404.1520; 4.1527(b) & (c). When the ALJ ignores significant

9    and probative evidence in the record favorable to a claimant's position, the ALJ "thereby

10   provide[s] an incomplete residual functional capacity determination." *Hill v. Astrue*, 698 F.3d

11   1153, 1161 (9th Cir. 2012). *See also Vincent*, 739 F.2d at 1394-95 (*quoting Cotter v. Harris*, 642

12   F.2d 700, 706 (3d Cir. 1981)). Critically, a RFC finding must describe Plaintiff's "maximum

13   remaining ability to do sustained work activities in an ordinary work setting on a regular and

14   continuing basis." Social Security Ruling ("SSR") 96-8P, *available at* 1996 WL 374184. SSR

15   96-8P further explains that a "regular and continuing basis" means "8 hours a day, for 5 days a

16   week, or an equivalent work schedule." *Id.* Here, Dr. Lui's opinion concerning Plaintiff's

17   difficulty interacting with others and maintaining a steady work schedule "due to her inability to

18   adhere to a 9 to 5 job" goes directly to the question of whether Plaintiff was able to perform

19   sustained work activities on a regular and continuing basis; thus, this was a specific vocational

20   limitation the ALJ was required to consider. AR 1098. *See Hill*, 698 F.3d at 1161.

21        Defendant concedes the ALJ failed to discuss most of Dr. Lui's opined functional

22   limitations, but argues any error was harmless. Specifically, Defendant argues the ALJ's RFC

23   finding accounts for Dr. Lui's opinion concerning Plaintiff's ability to work on a regular and

24

1   continuing basis, because it limited Plaintiff to "less than a full range of light work, postural

2   limitations, independent tasks, and limited social contact." Dkt. 18, p. 6. However, an ALJ's

3   failure to discuss a physician's opinion can only be harmless error if it is inconsequential to the

4   ultimate non-disability determination. *See Hill*, 698 F.3d at 1161. *See also Molina v. Astrue* 674

5   F.3d 1104 1117 (9th Cir. 2012).[1] The specific limitations Defendant cites, such as postural

6   limitations, limitations to social contact, and a focus on independent tasks, address the nature,

7   type, and rigor of work Plaintiff is still able to perform. However, implicit in this finding is a

8   conclusion Plaintiff is capable of performing this work on a regular and continuing basis. *See*

9   *Finazzo v. Astrue*, 2:08-cv-806, 2009 WL 279033 (W.D.Wash. Feb. 5, 2009) ("It is axiomatic

10  that the RFC determination is inherently an assessment of a claimant's ability to perform

11  ongoing work.") (*citing* 20 C.F.R. § 404.1545(a)(4)). The fact the ALJ concluded Plaintiff would

12  be capable of performing work on a regular and continuing basis, while silently disregarding a

13  medical opinion calling this premise into question, is harmful error requiring remand.

14       Defendant, citing *Molina*, also argues the ALJ's failure to discuss Dr. Lui's opinion

15  makes no difference to the ultimate non-disability determination, as the ALJ discounted similar

16

17

18       [1] Defendant also argues the ALJ's failure to discuss the weight given to Dr. Lui's opinion
    Plaintiff would have difficulty interacting with people was harmless, as the ALJ's RFC finding
    reasonably accounts for this limitation. Dkt. 18, p. 5. Specifically, Defendant argues the RFC
19  finding limiting Plaintiff to jobs consisting mainly of independent tasks, in which she has
    "occasional superficial in-person contact with the general public, frequent non-direct contact
20  with the general public, and occasional superficial interaction with her co-workers," accounts for
    Dr. Lui's opinion Plaintiff would have difficulty interacting with people. When an RFC finding
21  accounts for a physician's opined limitations, an ALJ's failure to specifically discuss those
    limitations can be harmless error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir.
22  2008) (noting to the extent the ALJ erroneously omitted postural limitations, the error was
    harmless, as the RFC restriction to sedentary work necessarily accounted for those limitations).
23  However, as the ALJ failed to account for Dr. Lui's opinion concerning Plaintiff's inability to
    maintain a work schedule, this case must be remanded regardless of whether the RFC finding
24  accounted for Dr. Lui's opinion Plaintiff would have difficulty interacting with people.

1  opinions from a different examining psychologist, Dr. Lewis. Dkt. 18, p. 6 (*citing Molina*, 674

2  F.3d at 1118).  However, *Molina* is distinguishable. In *Molina*, the Ninth Circuit found the ALJ's

3  failure to discuss duplicative *lay witness* testimony was harmless, as the claimant in that case

4  opined to the same functional limitations described by the lay witnesses, and the ALJ's reasons

5  for discounting the claimant's testimony applied equally well to the lay witnesses. Unlike lay

6  witness testimony, however, Social Security regulations and rulings require an ALJ to consider

7  *all* medical opinions in the record, regardless of source. 20 C.F.R. §§ 404.1520; 404.1527(b) &

8  (c). Further, the consistency of a medical opinion with other opinions, as well as the whole

9  record, is a factor an ALJ must consider when determining the weight to give to a medical

10  opinion. 20 C.F.R. § 404.1527(c)(4). In any event, as discussed below, the ALJ did not properly

11  discount Dr. Lewis' opinion. Thus, by failing to properly evaluate Dr. Lui's opinion, the ALJ

12  committed harmful error requiring remand.

13              2. *Janice Lewis, Ph.D.*

14        Dr. Lewis examined Plaintiff on August 18, 2014. AR 1160. Plaintiff reported a history

15  of abuse, as well as a history of dyslexia and ADHD. AR 1161-64. Plaintiff also reported

16  difficulties in work settings, specifically noting she was unable to focus at her prior job. AR

17  1162. On mental status examination, Plaintiff presented as emotionally distraught, with a soft

18  spoken and tearful affect. AR 1165. Dr. Lewis noted Plaintiff was tangential and her narrative

19  was often off point, and also demonstrated poor insight and judgment. AR 1165. Plaintiff was

20  unable to complete serial sevens, and was only able to recall one out of three words after a five

21  minute delay. AR 1165. Many of Plaintiff's answers, though noted as correct, were also

22  tangential or contained non sequiturs. For example, when asked about recent current events,

23  Plaintiff discussed her history of learning disabilities, and when asked about the meaning of "3

24

parts to 1 part," she responded with "mixing compounds—like vodka. I'm allergic to grapes and grains… I dislike it." *See* AR 1165-66. Dr. Lewis indicated Plaintiff demonstrated mild to moderate problems on the mental status examination, as demonstrated by her incorrect and/or off task answers. AR 1167.

Dr. Lewis diagnosed Plaintiff with ADHD, major depressive disorder with anxious features, borderline personality disorder, post-traumatic stress disorder, and cannabis dependence. AR 1167. As a result of these impairments, Dr. Lewis opined Plaintiff would have marked limitations in her ability to:

- perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- work in coordination with or proximity to others without being unduly distracted;
- complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors;
- get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes;
- maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

AR 1170. Dr. Lewis also opined Plaintiff would have moderate limitations in her ability to: remember locations and work like procedures; maintain attention and concentration for extended periods; respond appropriately to changes in her work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others. AR 1170. In the remaining functional areas Dr. Lewis opined Plaintiff would either not be significantly limited, or would have no more than mild limitations. AR 1169-71.

The ALJ gave significant weight to the portion of Dr. Lewis' opinion where she opined Plaintiff would have no more than mild limitations in several functional areas, but otherwise gave Dr. Lewis' opinion little weight for the following six reasons:

**[1]** Dr. Lewis provided a narrative report that failed to provide an independent assessment of the claimant's mental health functioning, instead outlining previous evaluators' opinions, including ones from Dr. Walker and from Robert Parker, PH.D. Dr. Walker's opinion is addressed above; Dr. Parker's opinions were addressed by Judge Harvin-Woode's decision, and he did not evaluate the claimant again during the period at issue. *See* [AR 103]. Because Dr. Lewis did not provide an independent narrative assessment, but simply repeated the prior assessments, which have been addressed elsewhere, the undersigned gives this portion of her report no weight.

**[2]** Dr. Lewis also completed a check-the-box form, purporting to evaluate the claimant's functioning, but she failed to provide any narrative explanation of the ratings she checked, aside from stating "see full report." [AR 1169-71]. The undersigned has considered this form, but gives it very little weight because the "full report" fails to support many of the limitations indicated. For example, the doctor gave a marked rating in the domains addressing the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. [AR 1170-71]. Dr. Lewis had no treating relationship with the claimant and saw her only once, and the undersigned finds that the one interview with the claimant provided insufficient evidence on which to base her functioning on these domains. The only evidence on which the doctor could rely in evaluating these domains, given her limited exposure to the claimant, was the claimant's subjective reports about her functioning. Because the claimant's presentation and subjective complaints often did not match her performance on mental status examination or her reported activities—as also found by Judge Harvin-Woode in the previous decision—the undersigned finds that her subjective complaints are insufficient evidence on which to base an evaluation of her functioning, without corroborating clinical or objective evidence. The undersigned therefore gives these ratings very little weight.

**[3]** The doctor also indicated a marked limitation in the claimant's ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. [AR 1170]. The undersigned finds insufficient evidence for this rating in the doctor's report or in the medical evidence of record as a whole. Regarding the first portion of this domain, the claimant claims repeated [sic] in the record that she could not handle being around people, that she was bullied in school and in the workplace, and that she could not make herself understood by others. But the record shows that the claimant would be fully capable of maintaining socially appropriate behavior, given the limited exposure to co-workers and the public as outlined in the residual functional capacity. For example, the claimant's records from Harborview show that she consistently maintained an appropriate affect during group sessions, participated fully in discussions, and maintained focus during the meetings. *See* [AR 1179-1248].

**[4]** The undersigned finds insufficient evidence support in the doctor's full report to justify the moderate rating regarding the claimant's ability to remember locations and work-like procedures; to maintain attention and concentration in the customary 2-hour segments between break in most workplaces; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; or to make plans independently of others. [AR 1169-71]. The reasoning underlying the indicated limitations is not readily interpreted from doctor's clinical or objective findings, and the undersigned therefore finds it reasonable to conclude that Dr. Lewis based these ratings solely on the claimant's subjective reports.

The undersigned also gives little weight to several other domains, finding that they were also based solely on the claimant's subjective complaints. **[5]** For example, while Dr. Lewis found the claimant tangential and found it difficult to build rapport with her, her report did not describe the claimant as uncooperative or otherwise justify a marked limitation in her ability "to accept instructions and respond appropriately to criticism from supervisors." [AR 1170]. The doctor's rating of this domain is not consistent with the specific finding by Dr. Lui, that the claimant was cooperative, or with the medical evidence of record as a whole, which failed to show that the claimant was uncooperative or otherwise unable to interact appropriately with supervisors.

**[6]** Although the claimant's performance on mental status examination might justify Dr. Lewis's rating of no more than mild limitation in her ability to understand, remember, and carry out detailed instructions, the undersigned also gives little weight to this rating, finding it reasonable to limit the claimant to simple routine tasks, given her emotional lability.

AR 38-39.  Plaintiff argues these were not specific and legitimate reasons, supported by substantial evidence, for giving Dr. Lewis' opined limitations little weight. The Court agrees.

The ALJ's first reason for discounting Dr. Lewis' opinion, that Dr. Lewis failed to provide an independent narrative assessment, is unsupported by substantial evidence in the record. While it is true Dr. Lewis does discuss the opinions of Dr. Walker and Dr. Parker in her narrative report, she does more than simply recapitulate Dr. Walker and Dr. Parker's own narrative assessments. AR 1167. Dr. Lewis conducted an extensive medical record review, a clinical interview, administered a Mental Status Examination and Rey 15 assessment, and analyzed these components of her examination in the narrative report. AR 1160-67. To the extent

1    Dr. Lewis discusses Dr. Walker and Dr. Parker's opined limitations, she does so in the context of

2    comparing Plaintiff's condition at the time of the older opinions with Dr. Lewis'

3    contemporaneous clinical findings. *See, e.g.*, AR 1167 ("Not only has [Plaintiff's] condition

4    failed to respond to mental health intervention since [Dr. Parker's evaluations], but her ability to

5    cope has worsened since the 2009 evaluation. At the present time, she presents as emotionally

6    fragile, with poor insight, low self-esteem, and difficulty focusing her train of thought."). The

7    ALJ's first reason for discounting Dr. Lewis' opinion is unsupported by substantial evidence.

8        Second, the ALJ discounted Dr. Lewis' opinion Plaintiff would have marked limitations

9    in five domains[2] pertaining to Plaintiff's ability to maintain a schedule and remain on-task,

10   because they were expressed in a check-the-box form, and the accompanying written report

11   failed to support Dr. Lewis' opined limitations. AR 38. The ALJ noted Dr. Lewis did not

12   maintain a treating relationship with Plaintiff, and Dr. Lewis' one clinical interview "provided

13   insufficient evidence on which to base [Plaintiff's] functioning on these domains." AR 38. Thus,

14   the ALJ concluded Dr. Lewis' opinion concerning these functional areas must have been based

15   solely on Plaintiff's subjective testimony, which the ALJ separately discounted. Again, however,

16   the ALJ's premise is unsupported by substantial evidence.

17       Dr. Lewis's narrative report documents more than Plaintiff's subjective reports. For

18   instance, Dr. Lewis reviewed Plaintiff's medical records, including records reflecting Plaintiff

19   failed to attend scheduled appointments. *See* AR 444-60, 588-93, 601-07, 617, 618-70, 864, 904-

20   05, 923-25. Dr. Lewis also conducted a mental status examination, revealing poor judgment and

21   _____

22       [2]Specifically, Dr. Lewis' opinion Plaintiff would have marked limitations in her ability to
     perform activities within a schedule, maintain regular attendance, and be punctual within
23   customary tolerances; and complete a normal workday and workweek without interruptions from
     psychologically based symptoms and to perform at a consistent pace without an unreasonable
24   number and length of rest periods. AR 38, 1170-71.

1    insight, tangential thoughts, difficulty interpreting proverbs, diminished fund of knowledge, and

2    errors in a range of cognitive tests, such as serial sevens and delayed word recall. AR 1165-67.

3    These findings are consistent with Dr. Lewis' opined marked limitations in Plaintiff's ability to

4    complete a normal workday or workweek without interruptions from psychologically based

5    symptoms, or to perform at a consistent pace without an unreasonable number or length of rest

6    periods. When a doctor's opinion "is not more heavily based on a patient's self-reports than on

7    clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*,

8    763 F.3d 1154, 1162 (9th Cir. 2014).

9           Third, the ALJ discounted Dr. Lewis' opined limitations in Plaintiff's ability to maintain

10   socially appropriate behavior and to adhere to basic standards of neatness and cleanliness

11   because she concluded there was "insufficient evidence for this rating in the doctor's report or in

12   the medical evidence of record as whole." AR 39. However, the ALJ's conclusion that there is

13   insufficient evidence in Dr. Lewis' report to support this opined limitation is not a specific and

14   legitimate reason for discounting Dr. Lewis' opinion. The ALJ was required to do more than

15   state her conclusions; she was required to explain why her conclusions, rather than Dr. Lewis',

16   were correct. *Reddick*, 157 F.3d at 725. As discussed above, Dr. Lewis conducted a mental status

17   examination, clinical interview, and medical record review, all of which identify supporting

18   evidence for Dr. Lewis' opinion Plaintiff would have a marked limitation in her ability to

19   maintain socially appropriate behavior. For example, Dr. Lewis documented emotionally

20   distraught affect and behavior which caused the interview to last longer than planned. AR 1165.

21   Dr. Lewis also noted Plaintiff presented with poor insight and judgment, was difficult to build

22   rapport with, and was tangential in her thought process. AR 1165. Dr. Lewis documented

23   numerous clinically significant findings on mental status examination. AR 1167. The ALJ's

24

1 conclusion that this evidence was "insufficient" fails to achieve the specificity required by Social

2 Security Regulations and Ninth Circuit case law. *See Reddick*, 157 F.3d at 725. *See also Nguyen*

3 *v. Chater*, 172 F.3d 31, 35 (9th Cir. 1999) ("As a lay person, however, the ALJ was simply not

4 qualified to interpret raw medical data in functional terms and no medical opinion supported the

5 determination"); *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental

6 illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis

7 and observations of professional trained in the field of psychopathology. The report of a

8 psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric

9 methodology or the absence of substantial documentation"); *Schmidt v. Sullivan*, 914 F.2d 117,

10 118 (7th Cir. 1990)("[J]udges, including administrative law judges . . . must be careful not to

11 succumb to the temptation to play doctor.").

12      The ALJ also found the record as a whole provides insufficient support for Dr. Lewis'

13 opined limitations in socially appropriate behavior. Specifically, the ALJ cited to group therapy

14 records which indicated Plaintiff consistently demonstrated appropriate affect, full participation,

15 and ability to maintain focus during group sessions. AR 1179-1248. However, the ALJ's citation

16 is selective, ignoring numerous items in the record where Plaintiff failed to demonstrate

17 appropriate affect in social situations. *See, e.g.*, AR 864-910. 985. The Court also notes the

18 records cited by the ALJ are not as consistent as the ALJ suggests. *See, e.g.*, AR 1179-80 (noting

19 Plaintiff withdrew from group and individual therapy due to failure to attend sessions), 1192

20 (documenting Plaintiff's refusal to complete a diary card during individual therapy, and

21 Plaintiff's "judgmental, patronizing and sarcastic" comments towards therapy), 1220 (noting

22 Plaintiff had appropriate affect and behavior during group therapy, yet also noting Plaintiff was

23 knitting during the group session and should stop and focus on the session), 1227 (noting

24

Plaintiff became "dysregulated and left prematurely" during individual therapy), 1239 (noting

Plaintiff had slightly anxious affect during group therapy). The ALJ could not simply ignore the

evidence supporting Dr. Lewis' opined limitation in socially appropriate behavior when

concluding the record as a whole was insufficient. *See Lingenfelter v. Astrue,* 504 F.3d 1028,

1035 (9th Cir. 2007) (*citing Reddick*, 157 F.3d at 720) ("However, we must consider the entire

record as a whole, 'weighing both the evidence that supports and the evidence that detracts from

the Commissioner's conclusion[.]'").

Fourth, the ALJ discounted Dr. Lewis' opinion Plaintiff would have moderate limitations

in her ability to remember locations and work like procedures, maintain attention and

concentration in two-hour intervals, respond appropriately to changes in the work setting, be

aware of normal hazards and taken appropriate precautions, and make plans independently of

others, because Dr. Lewis' reasoning "is not readily interpreted from [Dr. Lewis'] clinical or

objective findings." AR 39. Thus, the ALJ found Dr. Lewis' opined limitations must have been

based entirely on Plaintiff's subjective reports. An ALJ may properly discount a doctor's opinion

if it is brief, conclusory, and inadequately supported by clinical findings. *Batson v. Comm'r, Soc.

Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). However, as discussed above, Dr. Lewis

supported her opinion with a clinical interview, mental status examination, and medical record

review. Plaintiff's affect and behavior caused the clinical interview to last longer than planned,

she demonstrated poor insight and judgment, had tangential thoughts and off-point narratives,

and made numerous errors in cognitive tasks, especially tasks pertaining to delayed recall. *See

AR 1165-66. As with Dr. Lewis' opinions concerning Plaintiff's ability to maintain a schedule*,

there is no indication Dr. Lewis' opinions were based more heavily on Plaintiff's subjective

reports rather than Dr. Lewis' own independent testing; thus, the ALJ failed to offer a specific

and legitimate reason for discounting Dr. Lewis' opined limitations. *See Ghanim*, 763 F.3d at 1162.

Fifth, and finally,[3] the ALJ discounted Dr. Lewis' conclusion Plaintiff had a marked limitation in her ability to accept instructions and respond appropriately to criticism from supervisors, because even though Dr. Lewis observed Plaintiff was tangential and difficult to build rapport with, Dr. Lewis "did not describe the claimant as uncooperative or otherwise justify [this limitation]." AR 39. To support this reasoning, the ALJ notes Dr. Lui had found Plaintiff to be cooperative on mental status examination, and the record as a whole fails to show the claimant was uncooperative. AR 39. Thus, the ALJ found Dr. Lewis' assessment must have been based solely on Plaintiff's subjective complaints. But, as with the ALJ's other reasons for discounting Dr. Lewis' opinion, the ALJ's reasoning in this regard is neither specific and legitimate, nor supported by substantial evidence. The record as a whole, including many citations by the ALJ throughout the written decision, documents instances of Plaintiff's uncooperative behavior. *See, e.g.*, AR 317, 1179-80, 1192, 1220, 1227, 1239. Further, though Dr. Lui indicated Plaintiff was cooperative during one mental status examination, this one item in the record is not more than a scintilla of evidence, nor is it evidence "a reasonable mind might accept as adequate to support a conclusion," that Dr. Lewis' opinion lacks support in the record.

---

[3] The ALJ also offered a sixth reason for discounting Dr. Lewis' opinion: the ALJ did not agree with Dr. Lewis' conclusion Plaintiff had no more than mild limitations in her ability to understand, remember, and carry out detailed instructions. AR 39, 1170. Though the ALJ did not offer any reasoning to justify discounting this aspect of Dr. Lewis' opinion, the ALJ ultimately resolved this issue in Plaintiff's favor, finding she was *more* limited in this domain than Dr. Lewis opined. AR 39. When an ALJ incorporates all of a physician's opined limitations into a residual functional capacity finding, there is no harmful error. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). *See also Molina*, 674 F.3d at 1117-18 (noting courts will not reverse for errors which are inconsequential to the ultimate non-disability determination).

1  *Magallanes,* 881 F.2d at 750. *Cf. Ryan v. Commissioner of Social Sec. Admin*, 528 F.3d 1194,

2  1200 (9th Cir. 2008) ("Nothing in [one examining doctor's report] rules out [another examining

3  doctor's] more extensive findings") (*quoting Regennitter v. Commissioner of Social Sec. Admin.*,

4  166 F.3d 1294, 1299 (9th Cir. 1999).[4] Thus, this was not a specific and legitimate reason for

5  discounting Dr. Lewis' opined limitation concerning Plaintiff's ability to cooperate with a

6  supervisor.

7        Because the ALJ failed to offer specific and legitimate reasons for discounting many of

8  Dr. Lewis' opined limitations, the ALJ committed harmful error, requiring remand.

9                    3. *Bruce Eather, Ph.D.*

10       State Agency Medical Consultant, Dr. Eather, reviewed the medical evidence of record

11  and assessed Plaintiff's mental RFC on December 6, 2012. AR 128. As part of his assessment of

12  Plaintiff's RFC, Dr. Eather concluded Plaintiff would have moderate limitations in her ability to

13  perform activities within a schedule, maintain regular attendance, be punctual within customary

14  tolerances, and maintain attention and concentration for extended periods. AR 127. When asked

15  to explain these limitations in narrative form, Dr. Eather noted Plaintiff "would have occasional

16  and moderate interference with attendance and overall [concentration, persistence, and pace] due

17

18

19  _____

20  [4] Even if the ALJ had properly discounted this limitation by reference to Dr. Lui's
    findings, remand for further consideration of Dr. Lewis' opinion would still be appropriate. The
21  ALJ discounted Dr. Lewis' opinions on a limitation-by-limitation basis, offering reasons specific
    to each opined limitation as a basis to give the limitations little weight. Thus, even if the ALJ
22  offered a specific and legitimate reason for discounting this aspect of Dr. Lewis' opinion, the
    ALJ failed to properly discount Dr. Lewis' other opined limitations. *Cf. Dale v. Colvin*, 823 F.3d
23  941, 945 (9th Cir. 2016) (holding an ALJ erred by dividing the opinion of an other medical
    source into two parts, but only offering germane reasons to discount one of the two parts of the
24  other medical source's opinion).

to combinations of [symptoms]." AR 127. The ALJ gave limited weight to Dr. Eather's opinion

for the following two reasons:

> First, the term "occasionally" has a specific meaning under the Social Security
> Act, specifically, one-third of the workday. The undersigned finds it reasonable to
> conclude that the doctors did not mean that the claimant would experience
> interference with attendance and overall concentration, persistence, or pace for
> one-third of the workday, for such interference would be consistent with
> disability, which the consultants did not find. The undersigned concludes instead
> that the ill-advised use of the word 'occasionally,' in this context, was intended to
> convey the more generally understood meaning of the word, specifically,
> "sometimes but not often." *See Merriam-Webster.com.* [Second, t]he term
> "moderate" is too vague to be employed in an residual functional capacity
> assessment, being an undefined term that provides no indication of how often and
> for what duration the interference would occur. The record fails to establish
> changed circumstances that would warrant adding this portion of the consultants'
> opinion to the claimant's residual functional capacity.

AR 40. Plaintiff argues these were not specific and legitimate reasons for discounting Dr.

Eather's opinion, and the Court agrees.

First, the ALJ concludes Dr. Eather could not have intended to use the term

"occasionally" as that term is defined in Social Security Regulations, because such a limitation

would necessarily mean Plaintiff was disabled. *See* 20 C.F.R. §§ 404.1567, 416.967 (*citing the*

*Dictionary of Occupational Titles ("DOT")*, Vol. 22, App. C, Components of the Definition

Trailer, Section IV (defining "occasionally" to mean an activity or condition which exists up to

one third of the time). Because Dr. Eather did not opine Plaintiff was disabled, the ALJ

concluded Dr. Eather could not have intended to use the term "occasionally" to mean she would

have attendance and concentration, persistence, and pace issues for up to one third of the work

day. AR 40. Even if the ALJ's logic had merit, it fails because Dr. Eather did not actually render

an opinion as to whether or not Plaintiff was disabled. Dr. Eather was asked to assess whether

Plaintiff met the criteria for a listing, and to assess Plaintiff's RFC. AR 124, 126-28. The

determination Plaintiff was not disabled was instead made by a different disability adjudicator.

1    AR 130. As Dr. Eather's task was limited to assessing Plaintiff's mental RFC, there is no

2    inconsistency in Dr. Eather's opinion which would entitle the ALJ to assume Dr. Eather did not

3    use "occasionally" to mean up to one third of the time. *See Nguyen*, 100 F.3d at 1465 ("[W]here

4    the purported existence of an inconsistency is squarely contradicted by the record, it may not

5    serve as the basis for the rejection of an examining physician's conclusion.").

6        Second, the ALJ concludes the term "moderate" is "too vague to be employed in an

7    residual functional capacity assessment." AR 40. However, Dr. Eather's mental RFC assessment

8    was completed in the context of the Office of Disability Adjudication and Review's own form.

9    AR 126-28. Dr. Eather's evaluation, further, describes categories of functioning and levels of

10   impairment in those categories which are routinely used to assess psychological impairments in

11   Social Security disability cases. *See, e.g.*, *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007)

12   (ALJ relied upon an examining psychologist who opined a claimant had moderate and mild

13   limitations in his ability to perform activities within a schedule, maintain regular attendance, be

14   punctual within customary tolerance, and complete a normal workday and workweek without

15   interruption from psychologically based symptoms, among other limitations). Importantly, the

16   classifications of mild, moderate, and marked limitations for mental impairments are expressly

17   incorporated into Social Security Administration regulations. *See* 20 C.F.R. § 416.920a. *See also*

18   *Haugen v. Colvin*, 2016 WL 304597, *3 (W.D. Wash. 2016). Contrary to the ALJ's reasoning,

19   Dr. Eather's opinion was couched in exactly the sort of "vocationally relevant" restrictions

20   considered by the Social Security Administration. *See, e.g.*, *Ryan v. Commissioner of Soc. Sec.*

21   *Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  In light of these errors, and in light of the fact the

22   case must be remanded for reconsideration of Dr. Lui and Dr. Lewis' opinions, the ALJ should

23   also reconsider Dr. Eather's opinion on remand.

24

II.   <u>Whether Plaintiff Presented Changed Circumstances Sufficient to Overcome the Presumption of Continuing Non-Disability.</u>

Plaintiff argues the ALJ erred by concluding Plaintiff failed to rebut the presumption of continuing non-disability.

**A. Standard**

Principles of res judicata apply to administrative decisions. *See Lyle v. Sec'y of Health & Human Servs.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). When a prior final decision of the Social Security Administration concludes a claimant is still capable of performing work existing in significant numbers in the national economy, the claimant is presumed to still be able to perform that level of work in any subsequent application. *Id.* at 568-69. The practical consequence of this presumption of continuing non-disability is a change in the burden of proof in subsequent applications. In the usual case, once a claimant shows he or she cannot perform his or her past relevant work, the burden shifts to the Commissioner at Step Five of the sequential evaluation to demonstrate the claimant can perform other jobs in the national economy. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1379 (9th Cir. 1984). However, the presumption of continuing non-disability means the claimant retains the burden at Step Five. *Id.*

Nonetheless, "the principle of res judicata should not be rigidly applied in administrative proceedings." *Lester*, 81 F.3d at 827. The presumption of continuing non-disability does not apply if the claimant can demonstrate "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). For example, an increase in an impairment's severity, or the existence of an impairment which was not considered in the prior final decision, would preclude the application of res judicata. *Lester*, 81 F.3d at 827-28. Also, a change in a claimant's age category under the Medical-Vocational Guidelines can constitute a changed circumstance. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

### B.  Application of Standard

Plaintiff argues she demonstrated changed circumstances in two ways: first, prior to ALJ Rosa's written decision, Plaintiff turned 50 years old; second, the medical evidence of record, including the opinions from Dr. Lui, Dr. Lewis, and Dr. Eather, demonstrated Plaintiff's medically determinable impairments had increased in severity since the date of ALJ Harvin-Woode's decision.

Defendant concedes Plaintiff's change in age constitutes a changed circumstance, as Plaintiff has moved from the age category of "younger individual" (Age 18-49) to "closely approaching advanced age" (Age 50-54) *See* 20 C.F.R. §§ 404.1563, 416.963. *See also Chavez* 844 F.2d at 693. But, Defendant argues any error in the ALJ failing to consider this change in age is harmless, as Plaintiff's changed circumstance does not indicate greater disability. *See Molina*, 674 F.3d at 1115; *Chavez*, 844 F.2d at 693. Defendant's harmless error analysis stems from the proposition that the Ninth Circuit cases dealing with age as a changed circumstance pertain to situations where, due to a change in age category, a claimant would be entitled to a finding of disability under the Medical-Vocational Guidelines. *See Chavez*, 844 F.2d at 693; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00 and SSR 83-11, *available at* 1983 WL 31252. Here, by contrast, Defendant argues the Medical-Vocational Guidelines do not direct a finding of disability regardless of whether Plaintiff falls into the category of "younger individual" or "closely approaching advanced age," thus, the error could not have impacted the ALJ's ultimate non-disability determination.

However, simply because the Medical-Vocational Guidelines do not direct a finding of disability in this case does not mean the logic of *Chavez* and its progeny is not applicable here. The *Chavez* court held a Plaintiff must prove their changed circumstance indicated a greater

1    disability than that which was present at the time of their first application. *Chavez*, 844 F.2d at

2    693. The *Chavez* court also noted, under the facts of that particular case, the claimant's fifty-fifth

3    birthday would necessitate a finding of disability under the Medical-Vocational Guidelines. *Id.*

4    However, subsequent cases interpreting *Chavez* have held the transition from "younger

5    individual" to "closely approaching advancing age" could be a changed circumstance which

6    indicates greater disability, without regard to whether the Medical-Vocational Guidelines would

7    *direct* a finding of disability. *See Oberg v. Astrue*, 472 Fed.Appx. 488, 490 (9th Cir. 2012).

8    Instead, under those circumstances, the appropriate course is to remand to the ALJ to evaluate

9    whether the change in circumstances indicates greater disability. *Id.*

10          Here, the ALJ asked the Vocational Expert to take Plaintiff's age into account when

11   evaluating whether Plaintiff was capable of performing other jobs at Step Five of the sequential

12   evaluation. AR 77. The Court also notes that, due to the errors in the ALJ's evaluation of the

13   medical evidence, the RFC finding the ALJ used as the basis of her hypothetical questions to the

14   Vocational Expert was not supported by substantial evidence. Under these circumstances, the

15   ALJ should evaluate, on remand, whether Plaintiff has presented changed circumstances

16   sufficient to rebut the presumption of continuing non-disability.

17                                      **CONCLUSION**

18          Based on the foregoing reasons, the Court finds the ALJ erred by failing to properly

19   evaluate the medical opinion evidence. Therefore, the Court orders this matter be reversed and

20   remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should

21   reevaluate the medical opinion evidence, reevaluate whether Plaintiff has presented changed

22   circumstances sufficient to rebut the presumption of continuing non-disability, and proceed on to

23

24

1    Steps Four and Five of the sequential evaluation. The ALJ should also develop the record as

2    needed. Judgment should be for Plaintiff and the case should be closed.

3          Dated this 20th day of October, 2016.

4

5                                                David W. Christel
                                                 United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24